Argued September 20, 1928, affirmed January 15, argued on rehearing April 30, former opinion adhered to June 25, second petition for rehearing denied and motion to file supplemental cost bill denied July 30, 1929.

# MADGE ABRAHAM *v.* J. G. MACK ET AL.

(273 Pac. 711; 278 Pac. 972.)

For appellant there was a brief and oral argument by *Mr. W. C. Bristol* and *Mr. Albert Abraham.*

For respondent Madge Abraham there was a brief and oral arguments by *Mr. T. J. Cleeton* and *Mr. James H. McMenamin.*

For respondent Mollie Mack there was a brief and oral argument by *Mr. Albert Abraham.*

PER CURIAM.—■ ■ To accord with a concession made by plaintiff's attorney as to the sum due the plaintiff, the court reduced the amount specified in the general verdict from $6,635.55 to $6,283.51. Notwithstanding that this reduction is in favor of defendant Mack, he objects most strenuously to the action of the court in amending the verdict. The court's action was clearly within the compass of the law. It is well settled by the great weight of authority that a verdict may be amended with reference both to matters of form and of substance during the term, either by reference to the judge's notes taken at the trial, or by other satisfactory evidence: 22 Ency. of Pl. & Pr. 974, 975; *Miller* v. *Steele,* 153 Fed. 714 (82 C. C. A. 572). To like effect, see *Hodgkins* v. *Mead,* 119 N. Y. 166 (23 N. E. 559), and *Wands*

v. *City of Schenectady,* 171 App. Div. 94 (156 N. Y. Supp. 860), where the court said:

"Modern ideas of justice will not permit form to triumph over substance."

In the Wands case, the court then quoted Section 723 of the Code of Civil Procedure of New York, which is, in substance, the same as Section 107, Or. L., which reads:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."

At the hearing on appeal, the defendant J. G. Mack presented his case chiefly, if not entirely, on the theory that the special findings made by the jury were inconsistent with, and controlled, the general verdict in favor of the plaintiff. We have set out all verdicts in our statement. As to the office of verdicts, both general and special, see Section 152, Or. L., where it is written:

"A general verdict is that by which the jury pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury find the facts only, leaving the judgment to the court."

It is a general rule that a special verdict must state all the facts essential to a recovery, and that nothing can be supplied by intendment: 2 Thompson on Trials (1 ed.), § 2651. As to construction, a special verdict, like other instruments of writing, must be taken as a whole, and all material facts which it finds must be considered together: *Forest Products Co.* v. *Dant & Russell,* 117 Or. 637 (244 Pac. 531); 2 Thompson on Trials (1 ed.), § 2654; 38 Cyc. 1930;

27 R. C. L., "Verdicts," § 53. It is true that, when a special finding of fact taken as a whole shall be irreconcilably inconsistent with the general verdict, the special verdict shall control: Or. L., § 155; 27 R. C. L., "Verdicts," § 53; 38 Cyc. 1927; *Rolfes* v. *Russel*, 5 Or. 400; *Loewenberg* v. *Rosenthal*, 18 Or. 178 (22 Pac. 601).

■ In view of the general and special findings against the defendant in this case, it is difficult to understand how a judgment could have been entered in his favor. One of the special findings plainly shows that J. G. Mack became indebted to Maurice Abraham in the sum of $12,262.42, and a further finding shows that the total amount paid by Mack on his indebtedness to Abraham was $5,274.83. Special Finding No. 3 shows that Abraham had an agreement with Mack, entered into on November 19, 1917, for the payment of a specified sum of money arising out of their partnership contract, and Finding No. 13 is to the same effect. In answer to Question No. 9, the jury found, in effect, that Abraham sold Mack his interest in the merchandise and stock in trade belonging to J. G. Mack & Company, a corporation.

There are two findings that are claimed to be inconsistent with the general verdict. The answer to Interrogatory No. 5 is to the effect that the account of Maurice Abraham was, on March 18, 1922, balanced, so that all of the debits and all of the credits equalled each other. And, when asked whether Abraham sold J. G. Mack any shares of the capital stock of the corporation, the jury answered "No."

The record shows that, at the request of Mack, the corporation was kept alive until June, 1919, and Abraham continued to hold the capital stock he had agreed to transfer, and to act as a director of the

corporation. Abraham testified that Mack desired that this be done because he believed that the preservation of the life of the corporation might be of advantage to him in settling its former business. But that the property of the corporation was transferred to J. G. and Mollie Mack, and that they went into possession thereof, and received the benefit of the same, there is no doubt. The rights of the parties to the corporate property were clearly expounded to the jury by the full, complete and voluminous instructions given by the trial court; and the jury understood the reason that Abraham retained possession of the shares of capital stock until the dissolution of the corporation.

Again, adverting to the value of special verdicts: From an examination of the answers to the several special interrogatories, it is apparent that all but two support the general verdict. In this connection, we quote the following pertinent excerpt from 27 R. C. L., "Verdicts," Section 53:

"All the elements which go to make up a party's right of recovery are found in his favor by a general verdict for him, and all reasonable presumptions will be entertained in favor of the verdict, while nothing will be presumed in aid of the special findings of fact. If the general verdict thus aided is not in irreconcilable conflict with the findings, it must stand. Therefore, in conceding to the jury the presumption of right judgment, to overthrow its general verdict, the special facts returned must be of such a nature as to exclude the possible existence of other controlling facts, provable under the issues, relating to the same subject. They must clearly exclude every conclusion that would harmonize with the general verdict, as it is only when the antagonism between the special findings and the general verdict on material questions is of such a nature as to be beyond

the possibility of reconciliation under any supposable state of facts provable under the issues that the special findings control."

To the same effect is 38 Cyc. 1927.

■ Furthermore, if, as contended by defendant Mack, two of the special findings are inconsistent and in conflict with the general verdict, then these special findings are inconsistent with the other special findings made by the jury. If this be true, the answers to the special interrogatories, being conflicting, neutralize each other and must be disregarded, and this would leave the general verdict standing: 27 R. C. L., "Verdicts," § 52. Also note the following by the editors of R. C. L., which is supported by abundant authority:

"If the facts specially found, when construed together, are manifestly inconsistent with each other, and contradictory and uncertain in their meaning, they will not control the general verdict though inconsistent with it. In such a case the general verdict must stand and judgment must be rendered without regard to the special findings." 27 R. C. L., "Verdicts," p. 881.

Clearly, the trial court did not err in denying defendant's motion for a judgment based upon the special verdicts in this case.

As to defendant's demurrer to the third amended complaint: From a careful examination of the questions raised by the demurrer, we are satisfied that it was properly overruled.

In his opening statement to the jury, plaintiff's counsel made a full statement of the facts that he expected to adduce in support of his client's complaint. Defendant Mack assigns as error the court's ruling on a motion to dismiss the action based upon that

statement. This opening statement is preserved in the record. It has been carefully read, and, in our opinion, discloses no apparent reason for the dismissal of the action.

During the course of the trial, the defendant offered a "supplemental and special plea," embracing the defense that plaintiff's cause of action, if any existed, had been barred by the statute of limitations. The bar of the statute of limitations must be interposed by the debtor. On this subject it is said in 1 Wood on Limitations (4 ed.), Section 7:

"Another general rule of great practical importance is, that the bar of the statute must be interposed by the diligence of the debtor and as early as possible,—usually, unless otherwise provided by statute, on the pleadings before the hearing, and that it will not be raised by the court unsolicited."

■ The plea offered by defendant in this case, however, contained much matter that was not a defense to plaintiff's cause of action; and it was properly rejected.

■ The defendant claims that he was prejudiced by reason of the fact that he was called to the witness-stand by the plaintiff, and, further, by an order for the examination of the books. We cannot agree with this contention. We do not think the fact that the plaintiff called the defendant to the witness-stand, or the fact that the court made an order for the examination of the books of J. G. Mack & Company with relation to the business transactions had by the partnership or the corporation designated as J. G. Mack & Company, should have prejudiced the defendant to such extent as to cause a reversal of this case.

■ Defendant Mack also complains that he is prejudiced by the introduction in evidence of exhibits

"F–1–2–3" and "G–1–2–3." There is no force in this contention. These exhibits were delivered to Abraham by defendant, and purported to contain a true statement of the accounts between them from 1917 to 1921.

We have read this lengthy record with care and diligence. We have consumed much time and thoughtfully considered each of the numerous assignments of error. We do not undertake to discourse upon the value or lack of value of each assignment. Some are but repetitions of others. But we have tried to consider each with some degree of deliberation. From an analysis of the record, we are persuaded that, under and by virtue of our Constitution, this cause has been finally determined by the trial jury. Our fundamental law brooks no interference by the courts with a finding by jury that is supported by some competent and relevant evidence: Or. Const., Art. VII, § 3c. We do not weigh the evidence. Under the Constitution we do not attempt to determine upon the more worthy of two opposing witnesses; but, in obedience to the command of that instrument, we have carefully analyzed the record in this case to determine whether or not each essential allegation of the complaint is supported by some competent and relevant testimony. From such analysis, we are of opinion that the evidence adduced is amply sufficient to uphold the judgment.

This cause is affirmed. AFFIRMED.

BEAN, J., not sitting.

ROSSMAN, J., did not participate in the hearing or consideration of this case.

Former opinion adhered to on rehearing June 25, 1929.

ON REHEARING.

(278 Pac. 972.)

For appellant there was a brief over the name of *Mr. W. C. Bristol,* with an oral argument by *Mr. Albert Abraham.*

For respondent Madge Abraham there was a brief over the name of *Mr. Jas. H. McMenamin,* with an oral argument by *Mr. T. J. Cleeton.*

For respondent Mollie Mack there was a brief over the name of *Mr. Albert Abraham.*

PER CURIAM.—■ Appellant J. G. Mack has presented an earnest petition for a rehearing. His able counsel have made strenuous effort to demonstrate that the original opinion reported *ante,* p. 32 (273 Pac. 711), is erroneous. It is claimed in the petition for rehearing that there is no evidence in the record to support one of the many findings made by the jury. Specifically it is claimed that there is no evidence to support Finding No. 11, reading as follows:

"What was the total amount that J. G. Mack paid to Maurice Abraham? A. $5274.83."

It is also contended, in the brief supporting the petition for rehearing that since the jury found defendant Mack not to have promised to pay plaintiff's assignor interest, that there is no evidence to support so much of Finding No. 12 as includes interest. We have spent a great deal of time re-examining

the evidence and re-reading the briefs and are constrained to hold that defendant has no cause for complaint on account of the original opinion herein. We find that Maurice Abraham, assignor of plaintiff, testified directly to the amounts owing to him by appellant J. G. Mack and the amounts received by him from the appellant.

In pages 96 and 97 of the transcript of testimony Maurice Abraham testified that he had several conversations with both defendants and ''they said they would pay me my interest and the half of the overdraft that they had made in the corporation, that is their overdraft more than what I had drawn out; also in the partnership, my interest in that half, with interest, and that they would take the stock of merchandise, pay me my half interest in that * * .'' In pages 97 and 98 he also testified:

''In the corporation Mr. Mack and Mrs. Mack had drawn $11,253 and some cents more than I had * * . In the partnership the overdraft was $4662 and some cents.''

He further testified that half of these two sums was the amount the defendants owed plaintiff.

''A. I thought, I started to say that, they said they would pay me the $2331 from the partnership, also the $5626 from the corporation, the twelve hundred and something my share of the inventory, and that was all merged in the one account, one understanding; it was not separated; it was not two claims against them, but it was all one claim based on the condition of this sale of 1917.''

In page 109 Maurice Abraham again testified that the defendants promised to pay him one half of the $11,257 and some cents and also half of the excess that defendants had withdrawn from the partnership account amounting to $2,331.39. He also tes-

tified in page 110 that he was to have a half of the net collections. Meaning by that the one half of the accounts collected after paying the indebtedness of the firm and the corporation. In page 132 et seq. the witness Maurice Abraham testified to payments which were made by defendant-appellant. In page 132 the witness testified as follows:

"Well, there is several payments in December, of 1917, and payments along through 1918; and in May, 1921 there was a thousand dollars paid."

■ It is unnecessary to set out more in detail the payments. On cross-examination the witness testified as set out in the petition for rehearing. We cannot reconcile all of his testimony so as to make it harmonize. We observe, however, that oftentimes the witness and interrogating counsel did not understand each other. Many times the witness' answers were not responsive to the questions propounded to him. It is neither the court's function to reconcile his testimony nor to harmonize his inconsistencies. That is peculiarly a question to be answered by the jury. This court has no more right than the Circuit Court had to substitute its judgment for the findings of the jury.

■ It is also claimed that Finding No. 7 is inconsistent with the general verdict and must prevail over the general verdict. The Finding No. 7 is to the effect that Maurice Abraham did not sell any shares of the capital stock of the corporation J. G. Mack and Company to the defendant J. G. Mack. The shares of the stock constitute the evidence of the shareholder's interest in the corporation and his right to participate in the profits thereof: Thompson on Corporations (3 ed.), 352, § 3512 (3507). The special findings of the jury clearly disclose the jury

believed Maurice Abraham had sold all of his interest in the corporation to J. G. Mack; that Maurice Abraham retained ownership of the shares of stock at the request of and to accommodate defendant J. G. Mack. The corporation did not continue in business after the adjustment between Maurice Abraham and defendant J. G. Mack in November, 1917.

The organization was maintained solely for the purpose of closing up its affairs and avoiding any possible complications which might arise in the collection of the debts owing to the corporation and the adjustment of any property matters which might arise in the course of winding up its affairs, if the corporation were dissolved. Maurice Abraham testified positively, and the jury must have believed his testimony, that he parted with all his interest in the corporation property, excepting his interest in the accounts owing to the corporation and that interest was only the excess of said accounts over the indebtedness of the corporation. The answer of the jury to the question 7, now under consideration, must be construed as meaning that Maurice Abraham did not sell the shares of stock simply, but parted with all the property interest he had in the corporation. He retained merely the shell. The meat all passed to appellant Mack. He retained the form while the substance passed to appellant Mack.

We are satisfied with the original opinion in this case and it is adhered to.

FORMER OPINION ADHERED TO.

ROSSMAN, J., did not participate.

BROWN, J., absent.